UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| LARRY LEA,<br><br>                    Plaintiff,<br><br>v.<br><br>ADAMS COUNTY SHERIFF RYAN ZOLLMAN; UNDERSHERIFF JEFF BROWN; OFFICER DAVIS; ADAMS COUNTY; and ADAMS COUNTY BOARD OF COMMISSIONERS,<br><br>                    Defendants. | Case No. 1:14-cv-00045-EJL-CWD<br><br>**REPORT AND RECOMMENDATION** |

### INTRODUCTION

On February 11, 2014, Plaintiff filed a complaint against Defendants alleging violations of his Eighth and Fourteenth Amendment rights, a violation under the Americans with Disabilities Act, and unidentified state law claims. The Court in its initial review order on May 8, 2014, permitted Plaintiff to proceed, provided he amended his complaint within thirty days to correct the identified deficiencies. (Dkt. 7.)

Plaintiff filed his amended complaint on June 3, 2014, alleging Defendants subjected him to dangerous prison conditions by housing him in a cell block with a

**REPORT AND RECOMMENDATION  - 1**

mentally unstable and dangerous inmate, who later attacked him. Plaintiff claimed that Defendant Brown, while transporting Plaintiff to the Adams County Jail, stated Plaintiff would be housed with the mentally unstable inmate but told Plaintiff, "as long as I don't mess with him, I should be alright [sic]." (Am. Compl., Dkt. 9-2, at 3.) Plaintiff alleged that another jail employee, Officer Davis, took custody of Plaintiff from Defendant Brown and placed Plaintiff in the cell where he was later attacked. (*Id*. at 4.) In addition to these two Defendants, Plaintiff also brought suit against Sheriff Zollman and Adams County, alleging that Zollman is responsible for placing Plaintiff in the cell with the dangerous inmate and that Adams County has a policy of allowing the standards at the jail to deteriorate because of the increased revenue the county receives from the Idaho Department of Corrections for housing state inmates in the jail. (*Id*. at 6.) Plaintiff does not include the previously mentioned ADA or state law claims in his amended complaint, and alleged only an Eighth Amendment claim and a Fourteenth Amendment procedural due process claim against Defendants.

In its review of the amended complaint, the Court did not allow Plaintiff to proceed on his Eighth Amendment claims against Adams County or the Adams County Board of Commissioners, explaining Plaintiff's amended complaint did not provide any specific allegations that would give rise to a plausible inference that Adams County has or had a policy amounting to deliberate indifference to inmate safety. *See Monell v. Dept. of Soc. Servs.*, 436 U.S. 658, 694 (1978); *Mabe v. San Bernardino Cnty.*, 237 F.3d 1101, 1110-11 (9th Cir. 2001). (Dkt. 12.) The Court determined the amended complaint stated a

**REPORT AND RECOMMENDATION  - 2**

colorable Eighth Amendment deliberate indifference and Fourteenth Amendment due process claim against the individual defendants only. (Dkt. 12.)

In its scheduling order on February 11, 2015, the Court required all motions for summary judgment to be filed no later than 210 days after entry of the order, and required responsive briefs to be filed within thirty days thereafter. (Dkt. 27.) Defendants filed their motion for summary judgment on February 23, 2016, asserting all claims against Defendants are subject to summary dismissal because there was no Eighth Amendment violation, and the Defendants are entitled to qualified immunity on Plaintiff's procedural due process claim. (Dkt. 34.) Plaintiff did not file a response contesting Defendants' motion for summary judgment, although Plaintiff was provided with notice from the Court regarding the summary judgment rule requirements on September 10, 2015.[1] Defendants' certificate of service indicates they mailed Plaintiff a copy of the motion and supporting documents at his last known mailing address on February 22, 2016.

The motion for summary judgment is now ripe for review. Because Plaintiff failed to file an opposition to Defendants' assertions of fact, the Court considers the facts as set forth by Defendants undisputed for purposes of the motion. Fed. R. Civ. P. 56(c)(2). The Court will recommend that the district judge grant summary judgment on the grounds that the motion and supporting materials show the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c)(3).

---

[1] The Court was notified on September 29, 2014, that Plaintiff was no longer at the address of record given to the Court, and directed Plaintiff to file a notice of change of address. Plaintiff did so on October 17, 2014, and February 5, 2015, (Dkt. 18, 24); however, mail sent to the address provided on February 5, 2015, was later returned. Plaintiff has not filed any further notice with the Court regarding his current mailing address.

**REPORT AND RECOMMENDATION - 3**

# FACTS

According to the amended complaint, on May 20, 2013, Defendants Brown, Davis and Zollman placed Plaintiff, a convicted prisoner, in a cell block with a known mentally unstable and dangerous inmate, who allegedly attacked and injured Plaintiff.

With regard to Defendant Brown, Plaintiff states that Brown was following a transportation order under the supervision of Adams County Sheriff Zollman. Brown travelled from Council, Idaho, to Lewiston, Idaho, to pick up Plaintiff from the county jail in Lewiston and transfer him to the Adams County jail. While traveling, Brown allegedly told Plaintiff that, while in Adams County jail, Brown would be placed with inmate Culley a dangerous inmate, and that as long as Plaintiff "don't mess with him, [he] should be alright."

With regard to Defendant Davis, Plaintiff alleges Davis was the jailer for the Adams County jail. Plaintiff contends Davis participated in the decision to house him with inmate Culley in a cell in B Block at the Adams County jail.

Finally, with regard to Sheriff Zollman, Plaintiff contends Zollman had knowledge that Brown and Davis were going to place Plaintiff with inmate Culley, a dangerous inmate.

The incident occurred on July 1, 2013, when the male inmates of B Block at the Adams County jail were informed in advance of an IDOC auxiliary transport van arriving to transport prisoners. Those inmates who were scheduled to leave the Adams County jail, including Plaintiff, were told to prepare. Sheriff Zollman began taking IDOC inmates and their property to booking one at a time to have them ready for when the IDOC van

**REPORT AND RECOMMENDATION  - 4**

arrived. Plaintiff was later transported to the booking area, at which time Sheriff Zollman noted blood on Plaintiff's shirt. Plaintiff reported inmate Culley assaulted him shortly before Sheriff Zollman arrived to escort Plaintiff out of B Block. Later review of the video footage of B Block did not reveal anything out of the ordinary, however.

In their summary judgment motion, Defendants allege Plaintiff's allegations are false, as the investigation into the incident did not reveal that Culley attacked Plaintiff. Even if the attack occurred, Defendants assert none of them either knew, or had reason to know, that Culley posed a substantial risk of serious harm to his fellow inmates. And finally, Defendants contend they are entitled to qualified immunity on Plaintiff's procedural due process claim, because there is no clearly established law requiring notice and an opportunity to be heard prior to placement of a prisoner with an allegedly dangerous prisoner.

## DISPOSITION

**1.    Standard of Law**

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege a violation of rights protected by the Constitution or created by federal statute proximately caused by conduct of a person acting under color of state law. *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). Vague and conclusory allegations of official participation in civil rights violations are not sufficient. *See Ivey v. Board of Regents of Univ. of Alaska*, 673 F.2d 266, 268 ((9th Cir. Cir. 1982). Rather, "[l]iability under section 1983 arises only upon a showing of personal participation by the defendant." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) (there is no respondeat superior liability under §1983).

**REPORT AND RECOMMENDATION  - 5**

To state a due process or Eighth Amendment prison conditions claim, Plaintiff must show that he was "incarcerated under conditions posing a substantial risk of serious harm," or that he has been deprived of "the minimal civilized measure of life's necessities" as a result of Defendants' actions. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (internal quotation marks omitted). He must also show that Defendants were deliberately indifferent to his needs. "[D]eliberate indifference entails something more than mere negligence, [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* at 835. To exhibit deliberate indifference, a jail official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

Jail officials who act with deliberate indifference "to the threat of serious harm or injury" by one prisoner against another, are subject to liability under § 1983. *Berg v. Kincheloe*, 794 F.2d 457, 459 (9th Cir. 1986). "Having incarcerated persons with demonstrated proclivities for antisocial criminal, and often violent, conduct, having stripped them of virtually every means of self-protection and foreclosed their access to outside aid, the government and its officials are not free to let the state of nature take its course." *Farmer*, 511 U.S. at 833 (internal quotation marks, citation, and alterations omitted). Although even an obvious danger does not result in liability if the official is not subjectively aware of it, a prison official cannot "escape liability for deliberate indifference by showing that, while he was aware of an obvious, substantial risk to

inmate safety, he did not know that the complainant was especially likely to be assaulted by the specific prisoner who eventually committed the assault." *Id.* at 843.

With regard to Sheriff Zollman, a supervisor, there must be a showing of a "sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation" committed by the jail employees. *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011) (internal quotation marks omitted). A supervisor is not liable under § 1983 merely because his employees violate the Constitution. *Taylor*, 880 F.2d at 1045. Rather, to be subject to supervisory liability, the supervisor must either "set[] in motion a series of acts by others, or . . . knowingly refus[e] to terminate a series of acts by others, which the supervisor knew or reasonably should have known would cause others to inflict a constitutional injury." *Starr*, 652 F.3d at 1207 (internal quotation marks omitted).

The right to procedural due process of law under the Fourteenth Amendment prohibits the government from depriving an individual of a liberty or property interest without following the proper procedures for doing so. *Wolff v. McDonnell*, 418 U.S. 539, 558-66 (1974). Only claims involving a "liberty interest" are actionable. To succeed on a procedural due process claim, a plaintiff must establish (1) that he possessed a liberty interest and (2) that the defendants deprived him of that interest as a result of insufficient process.

The Supreme Court of the United States has held that a prisoner possesses a liberty interest under the federal constitution when a change occurs in confinement that imposes an "atypical and significant hardship . . . in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). In *Sandin*, the Court examined

**REPORT AND RECOMMENDATION  - 7**

whether a prisoner had a liberty interest in not being confined in disciplinary segregation. There, the Court held that, for a district court to determine whether there is such a liberty interest, it must analyze three factors: (1) whether disciplinary segregation was essentially the same as discretionary forms of segregation (such as administrative segregation and protective custody); (2) whether a comparison between the plaintiff's confinement and conditions in the general population showed that the plaintiff suffered no "major disruption in his environment;" and (3) whether the length of the plaintiff's sentence was affected. *Id.*, 515 U.S. at 486-87. If these factors are not met, a court may find that there is no liberty interest in not being placed in disciplinary segregation, which results in a prisoner not being entitled to sue prison officials for due process violations arising from the disciplinary hearing.

Summary judgment is appropriate where a party can show that, as to any claim or defense, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). "The moving party is entitled to summary judgment if that party shows that each material fact cannot be disputed." *Caplinger v. CCA*, 999 F.Supp.2d 1203, 1212 (D. Idaho 2014). "To show that the material facts are not in dispute, a party may cite to particular parts of materials in the record, or show that the adverse party is unable to produce admissible evidence to support the fact." *Id.* (citing Fed. R. Civ. P. 56(c)(1)(A), (B)).

2.  **Eighth Amendment Claim Against Defendants Brown, Davis, and Zollman**

Plaintiff has failed to come forward with evidence of facts disputing Defendants' affidavits that declare they had no knowledge as to the risk of serious harm to Plaintiff.

REPORT AND RECOMMENDATION - 8

Defendant Brown indicates in his affidavit he had no personal involvement in the placement of Plaintiff in the same cell block as inmate Culley, nor any personal knowledge that inmate Culley posed a threat to Plaintiff or other inmates. Defendant Davis indicates also that he had no personal knowledge inmate Culley posed a threat to Plaintiff or other inmates. And, Sheriff Zollman echoes these same facts, indicating he had no personal knowledge of any danger posed by inmate Culley to Plaintiff or other inmates, and no involvement in Plaintiff's placement in the same cell block with inmate Culley.

Prison officials cannot be deliberately indifferent toward a purported substantial risk of harm when either Plaintiff failed to inform them of the risk, or officials had no independent or other knowledge of any risk. Merely harboring Plaintiff with an inmate imprisoned for committing a serious crime does not rise to the level of deliberate indifference.

Based upon the undisputed evidence, there is no genuine issue of material fact regarding Plaintiff's Eighth Amendment failure to protect claim. Other than being housed with an inmate incarcerated for committing a serious crime, which is the case in virtually all prison environments, the record does not support Plaintiff's contention he was incarcerated under conditions posing a substantial risk of serious harm, nor are there genuine issues of material fact establishing Defendants were deliberately indifferent to such a risk of harm. There is no evidence prison officials had even a "suspicion" that an attack would occur, and they need more than that to satisfy the subjective element in *Farmer*. *See Berg v. Kincheloe*, 974 F.2d 457, 459 (9th Cir. 1986).

**REPORT AND RECOMMENDATION  - 9**

### 3. Qualified Immunity Regarding Plaintiff's Fourteenth Amendment Claim

The doctrine of qualified immunity protects state officials from personal liability for on-the-job conduct so long as the conduct is objectively reasonable and does not violate an inmate's clearly-established federal rights. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). True to its dual purposes of protecting state actors who act in good faith and redressing clear wrongs caused by state actors, the qualified immunity standard "gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (quotation omitted).

Here, the threshold question is whether Plaintiff had a liberty interest in not being housed with a dangerous inmate under the circumstances presented, which involved the temporary placement of Plaintiff in B Block with inmate Culley at the Adams County jail. "The touchstone of the inquiry into the existence of a protected, state-created liberty interest in avoiding restrictive conditions of confinement is not the language of regulations regarding those conditions but the nature of those conditions themselves 'in relation to the ordinary incidents of prison life.'" *Sandin*, 525 U.S. at 484.

Applying the *Sandin* inquiry to the facts here, the Court finds no liberty interest protecting against an assignment to a particular cell block with another inmate who may have been charged with or convicted of a serious crime. Plaintiff's allegations, and Defendants' affidavits, do not establish the sort of dramatic departure from the basic conditions of the inmate's confinement or sentence triggering a protected liberty interest.

**REPORT AND RECOMMENDATION - 10**

Moreover, the absence of any knowledge by Defendants of inmate Culley's dangerous propensities yields the conclusion that Defendants' conduct was objectively reasonable.

## CONCLUSION

The Court concludes Plaintiff has not established a genuine issue of material fact on either his Eighth Amendment deliberate indifference claim, or his Fourteenth Amendment due process claim. Based upon the undisputed facts, there is no evidence that Plaintiff's housing assignment in B Block at Adams County jail with inmate Culley, who was not known to be dangerous to other inmates or to Plaintiff specifically, constituted anything other than an ordinary incident of prison life.

## RECOMMENDATION

**NOW THEREFORE IT IS HEREBY RECOMMENDED:**

1) Defendants' Motion for Summary Judgment (Dkt. 34) be **GRANTED**.

Written objections to this Report and Recommendation must be filed within fourteen (14) days pursuant to 28 U.S.C. § 636(b)(1) and Dist. Idaho L. Rule 72.1(b), or as a result of failing to do so, that party may waive the right to raise factual and/or legal objections to the United States Court of Appeals for the Ninth Circuit.

DATED: May 18, 2016

_____

Honorable Candy W. Dale
United States Magistrate Judge